IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| J. CHRISTOPHER THOMAS, Individually and as Trustee of U/A/W J. Christopher, Settlor, | ) ) ) ) | |
| Plaintiff, | ) ) | 4:09CV3143 |
| v. | ) ) | |
| | ) | **MEMORANDUM AND ORDER** |
| VISTA A&S 2006-1 LLC, a Nebraska limited liability company; VISTA OIL & GAS, INC., a Colorado corporation, and the initial member of Vista A&S 2006-1 LLC; DAVID M. NICKLAS, for purposes of R.R.S. Neb., Chap. 8, Art. 11, § 8-1118(3), a person directly or indirectly in control of Vista A&S 2006-1 LLC; and CLARK R. NICKLAS, for purposes of R.R.S. Neb., Art. 11, § 8-1118(3), a person directly or indirectly in control of Vista A&S 2006-1 LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff brings this action for declaratory and monetary relief, alleging federal and state securities fraud, breach of contract, and breach of fiduciary duty related to the ownership and management of defendant Vista A&S 2006-1 LLC ("Vista A&S"). Specifically, Plaintiff's second amended complaint (filing 54-1) asserts the following claims: (1) "declaratory relief nullifying ownership units of Vista Oil & Gas, Inc., and appointment of a receiver"; (2) violation of the Securities Act of Nebraska, Neb. Rev. Stat. §§ 8-1101 to 8-1123; (3) common law fraud; (4) breach of contract; (5) breach of fiduciary duty; (6) violations of the Federal Securities Act, section 10(b) of the

Securities Exchange Act of 1934, and Rule 10b-5[1]; and (7) violations of section 20(a) of the Exchange Act by defendants David and Clark Nicklas.

Defendants have filed a motion (filing 30) to dismiss [2] Plaintiff's securities and common law fraud claims pursuant to the Private Securities Litigation Reform Act, Federal Rules of Civil Procedure 9(b) and 12(b)(6), and for failure to plead loss causation; Plaintiff's state-law claims for lack of supplemental subject matter jurisdiction if the federal claims are dismissed; and Plaintiff's declaratory judgment and breach-of-fiduciary-duty claims against Clark Nicklas and Vista Oil & Gas, Inc., pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing 30.) The defendants have also filed motions to strike Plaintiff's jury demand (filing 32) and to strike various parts of an evidence index (filing 46).

## I. RELEVANT FACTUAL ALLEGATIONS

Vista A&S is a Nebraska limited liability company ("LLC") engaged in the business of investing in oil and gas mineral interests in Nebraska and Colorado and providing seismic services[3] related to those interests. (Filing 54-1, Second Amended Complaint ¶ 4.) Specifically, Vista A&S purchases land and performs seismic testing, and then sells to third parties mineral leases or the rights to drill on that

---

[1]*See* 48 Stat. 891, as amended, 15 U.S.C. § 78j(b); SEC Rule 10b-5, 17 C.F.R. § 240.10b-5(b) (2009).

[2]Pursuant to prior order of the court (filing 71), the defendants' motions to dismiss (filing 30), to strike the plaintiff's jury demand (filing 32), and to strike various parts of an evidence index (filing 46) were made applicable to the second amended complaint and were ripe for disposition on May 28, 2010.

[3]Seismic studies are alleged to analyze the quality of drilling prospects—that is, to determine whether particular acreage contains minerals in a volume that would make it economically viable to recover. (Filing 54-1 ¶¶ 37-38.)

2

acreage.  (Filing 54-1 ¶¶ 16, 37.)  Vista Oil & Gas, Inc., ("Vista Oil") is a Colorado corporation and the initial member of Vista A&S.  David Nicklas is the president of Vista Oil, and was designated as the managing member of Vista A&S in the Operating Agreement for that entity.  David Nicklas's father, Clark Nicklas, is the vice-president of Vista Oil.  (Filing 54-1 ¶¶ 5-7.)

Plaintiff is an investor in oil and gas businesses, and has invested in businesses affiliated with defendants Clark and David Nicklas for more than ten years.  (Filing 54-1 ¶¶ 8, 14.)  Plaintiff alleges that he was induced to invest $300,000 in cash in Vista A&S on July 15, 2006, based upon the false oral and written representation by David and Clark Nicklas[4] that the initial member of Vista A&S—defendant Vista Oil—had made a cash contribution equal to 25 percent of Vista A&S's $4,000,000 initial capitalization, or $1,000,000.[5]  Plaintiff alleges that, contrary to oral communications with investors and written representations in the July 15, 2006, Operating Agreement, Vista Oil did not actually make a cash contribution, but rather

---

[4]David and Clark Nicklas are alleged to be "persons directly or indirectly in control of Vista Oil & Gas, Inc. and, thereby, Vista A&S 2006-1 LLC." (Filing 54-1 ¶ 77.)  Plaintiff alleges that all defendants violated Section 10(b) and Rule 10b-5, and that by virtue of their positions as controlling persons, David and Clark Nicklas are individually liable pursuant to Section 20(a) of the Exchange Act.  (Filing 54-1 ¶ 116.)  Plaintiff alleges that the Nicklases had the "power to influence and control" decision-making for the Vista entities, day-to-day operations, and the content and dissemination of statements, as well as unlimited access to the Vista entities' reports, press releases, and public filings.  (Filing 54-1 ¶¶ 113-115.)

[5]While Plaintiff's second amended complaint alludes to several alleged misdeeds and misrepresentations by Defendants, Plaintiff has "explicitly limited his federal securities act causes [of action] to the single false statement that Defendants had invested cash in the amount of $1,000,000." (Filing 61 ¶ 32.)  Referencing a filing with the Nebraska Secretary of State, the parties' Operating Agreement, financial statements, and Vista Oil's capital account, paragraph 96 of Plaintiff's second amended complaint alleges in detail *how* this alleged misrepresentation was false.  (Filing 54-1 ¶ 96.)

made "contributions of acreage and seismic services *in kind–not cash*."  (Filing 54-1 ¶¶ 15, 19, 24, 25, 27, 77 (emphasis in original).)  Specifically, Plaintiff alleges:

> The statement that Vista Oil & Gas, Inc. had already invested 25% of the $4,000,000+ capitalization of Vista A&S 2006-1 LLC—in cash— was false, and Clark and David Nicklas in fact knew it was false at the time it was made, and intentionally made the false statement to this Plaintiff as a means of fraudulently inducing him to invest in Vista A&S 2006-1 LLC, knowing that Plaintiff would rely upon it in determining whether to invest in Vista A&S 2006-1 LLC, and this Plaintiff did reasonably so rely.

> In truth, Vista Oil & Gas, Inc. invested no cash at all in Vista A&S 2006-1 LLC.  Instead, Clark Nicklas' and David Nicklas' claimed contribution, through Vista Oil & Gas, Inc., to the capital of Vista A&S 2006-1 LLC consisted exclusively of the purported contributions of acreage and seismic services *in kind—not cash*.  That contribution in kind was the basis for Clark Nicklas' and David Nicklas' assertion of a 25% ownership interest by Vista Oil & Gas, Inc. (of which David Nicklas was President and Clark Nicklas was Vice President) in Vista A&S 2006-1 LLC, and the basis for the Plaintiff's and other members' of Vista A&S 2006-1 LLC, acquiescence in David Nicklas' designation as the managing member of Vista A&S 2006-1 LLC.

(Filing 54-1 ¶¶ 24, 25 (paragraph numbers deleted; emphasis in original).)

Plaintiff alleges that "as matters developed," and "[f]ollowing the distribution of the compiled financial statements of Vista A&S 2006-1, LLC," it "became apparent that [the] claimed 'in-kind' contributions of $1,067,000 to the capital of Vista A&S" did not actually come from Clark or David Nicklas or Vista Oil, but instead "represented the transfer of items of value paid for by other drilling partnership[s] (some of which Plaintiff J. Christopher Thomas had invested in) by use of those partnerships' cash" or constituted "improper pass throughs of costs by Clark and David Nicklas' controlled entities."  Thus, Defendants did not invest cash, nor

4

did they make an "in kind" investment, in exchange for their 25% interest in Vista A&S.  (Filing 54-1 ¶¶ 26, 31-36, 76.)

Plaintiff maintains that the defendants intentionally made the false and misleading misrepresentation regarding their cash investment in Vista A&S to cause Plaintiff and other investors to purchase securities in various Vista entities at "artificially inflated prices."  (Filing 54-1 ¶¶ 55, 94, 103.)

> David and Clark Nicklas knew, because of their prior dealings with Plaintiff J. Christopher Thomas, and the other investors in Vista A&S 2006-1, LLC, that a representation that the promoter had invested cash was the critical consideration, i.e., the "deal maker" for most investors' [sic], and clearly a material representation tending to lend credibility to an investment prospect.  By assuring investors that the promoter and investors would get in and out of the deal on an equal footing, . . . there was a representation of a total identity of economic interests . . . .

(Filing 54-1 ¶¶ 77, 97 (detailing specifics of who perpetrated alleged fraud, what fraud consisted of, where and when fraud occurred, and how fraud was perpetrated); *see also* Filing 54-1 ¶ 99 ("the misrepresentation that Vista Oil & Gas, Inc. had already invested $1,000,000+ in cash in Vista A&S . . . was critical to a prospective investor's decision. . . .  If it was good enough for Clark Nicklas to invest his own cash—to the tune of $1,000,000—it was good enough for [Plaintiff] . . . .").)

As to Defendants' state of mind, Plaintiff alleges that an "abundance of circumstances" provide a "strong inference" of Defendants' "fraudulent intent to deceive Plaintiff," such as the immediate and tangible financial benefit to Clark and David Nicklas and Vista Oil & Gas, Inc.  Specifically, Plaintiff states that the misrepresentation and resulting investments by others allowed Defendants to attain a 25% interest in Vista A&S; receive $485,836.99 in cash distributions from the investment between July 15, 2006, and June 2009; block an 80% super-majority vote

that would be required to remove David Nicklas as manager of Vista A&S; and shift to the cash-paying investors the risk of loss on the lease investments—all with no cash outlay on Defendants' part.  (Filing 54-1 ¶¶ 27-29.)  But for the defendants' misrepresentation, Plaintiff contends, he would not have invested in Vista A&S or, if he had invested, he would not have done so at the "artificially inflated prices which [he] paid," nor would he have assisted in making David Nicklas the manager of the entity.  (Filing 54-1 ¶¶ 65, 108, 109.)  Plaintiff states that as a result of the alleged misrepresentation, "the price of securities was artificially inflated," and Plaintiff was "damaged thereby."  (Filing 54-1 ¶ 108.)

In addition, Plaintiff alleges that because Vista Oil did not contribute cash as represented, it did not acquire a 25% ownership interest in Vista A&S, it was not entitled to cash distributions from the investment, and ownership of Vista A&S is limited to those partners who invested cash in that entity.  (Filing 54-1 ¶¶ 27, 59, 63.) Specifically, Plaintiff claims he is entitled to $217,401, representing his $300,000 investment, plus $54,000 in interest from July 2006 to June 2009, less distributions totaling $136,599.  (Filing 54-1 ¶¶ 71, 81, 122-130.)  Plaintiff points out that he has suffered additional economic loss due to the misrepresentation in the form of "diminished dividends from Vista A&S 2006-1, LLC because 25% of the profits of that company have been improperly paid to Clark and Davis Nicklas' closely-controlled, and wholly-owned Vista Oil & Gas, Inc."  (Filing 54-1 ¶ 101.)

In his prayer for relief, Plaintiff requests that this court (1) declare void the purported 25% ownership interest in Vista A&S claimed by Vista Oil; (2) remove David Nicklas as manager of Vista A&S and appoint a receiver; (3) award Plaintiff compensatory and punitive damages; (4) order a constructive trust imposed upon all property held by Defendants that was wrongfully acquired from Plaintiff; and (5) award costs, expenses, and attorneys' fees.  (Filing 54-1 at CM/ECF pp. 50-51.)

## II.  STANDARD OF REVIEW & PLEADING REQUIREMENTS

In analyzing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), this court must accept as true all factual allegations, but is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (outlining standard of review in securities fraud case) (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009)).

> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "The court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002) (quotation omitted).

*McAdams*, 584 F.3d at 1113.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, imposes a heightened pleading standard for private securities actions "'to curb perceived abuses' of such actions, including 'nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers.'" *Horizon Asset Management, Inc. v. H & R Block, Inc.*, 580 F.3d 755, 761 (8th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007)).  With regard to claims of fraud in the sale and purchase of securities brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, a plaintiff must allege:

> "(1) a material misrepresentation (or omission); (2) scienter, i.e., a

7

wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (internal citations omitted) (emphases omitted); *see also In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 888 (8th Cir. 2002).

*Horizon Asset Management*, 580 F.3d at 760.

In private security fraud actions in which the plaintiff alleges that the defendant made untrue statements of material fact, as in this case, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, in actions that require a showing that a defendant acted with a particular state of mind (i.e., scienter), "the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The PSLRA requires that if either of these pleading requirements are not met, "the court shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A).

In this case, Defendants move for dismissal of Plaintiff's federal fraud claims based upon Plaintiff's failure to plead fraud with particularity and Plaintiff's failure to adequately allege scienter and loss causation, as required by the PSLRA. (Filing 31, at 8-16, 18-21 & 22-29.)

8

## III.  DISCUSSION

### A.  FRAUD CLAIMS

#### 1.  Federal Rule of Civil Procedure 9(b)

Defendants argue that Plaintiff's federal fraud claims (Counts (6) and (7)[6]) fail to satisfy the specificity requirements of Fed. R. Civ. P. 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Under Rule 9(b), a plaintiff "must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.  In other words, the party must typically identify the who, what, where, when, and how of the alleged fraud."  *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (applying heightened pleading standard of Fed. R. Civ. P. 9(b) to fraudulent misrepresentation claim under state law) (internal quotations & citations omitted).

However, as far as Plaintiff's federal fraud claims are concerned, "the [plaintiff] technically do[es] not need to meet the requirements of *both* Federal Rule of Civil Procedure 9(b) and the PSLRA, as the PSLRA supercedes reliance on 9(b) in securities fraud cases and embodies the standards of 9(b)."  *In re: Navarre Corp. Securities Litigation*, 299 F.3d 735, 742 (8th Cir. 2002).

Because I conclude below that Plaintiff's second amended complaint is sufficient under the PSLRA, it is also sufficient under Fed. R. Civ. P. 9(b), and

---

[6]Count (6)—violations of the Federal Securities Act, section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5; Count (7)—violations of section 20(a) of the Exchange Act by defendants David and Clark Nicklas.

Defendants' motion to dismiss on this ground shall be denied.

### 2. *PSLRA: Particularity & Scienter*

Defendants maintain that "[t]he most glaring deficiency [of Plaintiff's second amended complaint] is that Plaintiff is unable to allege scienter with the specificity required under the PSLRA." (Filing 72, at 3.)

> Plaintiff makes a single, central complaint—he claims that Vista Oil was supposed to contribute cash, not land and seismic services, for its share in Vista A&S. The Vista A&S Operating Agreement, however, contradicts this assertion. In fact, Section 1.9 of the Operating Agreement expressly permits capital contributions in the form of 'cash and other property.' To be sure, the Operating Agreement also contains a reference to Vista Oil making a 'cash' contribution, but that was an immaterial oversight and can provide no basis for a fraud claim.

(Filing 72, at 3-4.)

The "required state of mind"—or scienter—is "the defendant's intention to deceive, manipulate, or defraud, or the defendant's severe recklessness." *Horizon Asset Management, Inc.*, 580 F.3d at 761 (internal quotations omitted). "A plaintiff cannot recover without proving that a defendant made a material misstatement *with an intent to deceive*—not merely innocently or negligently." *Merck & Co., Inc. v. Reynolds*, ___ U.S. ___, 130 S. Ct. 1784, 1796 (2010) (emphasis in original). "[U]nless a § 10(b) plaintiff can set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted with the relevant knowledge or intent, the claim will fail." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 328 (2007)).

In determining whether the plaintiff's allegations give rise to a "strong inference" of scienter, the court must accept all factual allegations as true; consider

10

the complaint in its entirety, including documents incorporated into the complaint by reference and matters that can be judicially noted; and "weigh plausible nonculpable explanations for the defendants' conduct against inferences favoring the plaintiff's allegation of scienter." *Horizon Asset Management*, 580 F.3d at 761 (internal quotation omitted). The inference of scienter need not be the "most plausible of competing inferences," but it must be "more than merely reasonable or plausible"—that is, "it must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. (internal quotation omitted). Finally, the plaintiff must raise a "strong inference" of scienter as to each defendant and each alleged misrepresentation. *Id*.

Plaintiff's second amended complaint makes it clear that his federal securities fraud claims are based on the allegedly false statement by David and Clark Nicklas that the initial member of Vista A&S—defendant Vista Oil—had made a cash contribution of approximately $1,000,000 in Vista A&S, thereby inducing Plaintiff to invest $300,000 in cash in Vista A&S. The complaint could not be clearer in detailing the "who, what, where, when, and how" of the alleged fraud (filing 54-1 ¶ 97) by specifically describing why the alleged misrepresentation was false (filing 54-1 ¶ 96), why the misrepresentation was material (filing 54-1 ¶ 99), and how Plaintiff incurred an actual economic loss by virtue of the misrepresentation (filing 54-1 ¶ 101), as well as by expressly alleging that fluctuations in the natural gas market or other commodity markets did not cause Plaintiff's loss (filing 54-1 ¶ 102).

Further, Plaintiff alleges that Defendants had "actual knowledge of the misrepresentations and omissions of material facts" or "acted with reckless disregard for the truth . . . . for the purpose and effect of concealing any or all of the Vista entities' operating conditions and future business prospects from the Plaintiffs." (Filing 54-1 ¶ 107.) Plaintiff alleges that an "abundance of circumstances" provides a "strong inference" of Defendants' "fraudulent intent to deceive Plaintiff," such as the immediate, tangible financial benefits to Clark and David Nicklas and Vista Oil

11

& Gas, Inc., that resulted from their false representation that they had invested $1,000,000 in cash in Vista A&S.  According to the complaint, these financial benefits included the defendants' 25% interest in Vista A&S; their receipt of $485,836.99 in cash distributions from the investment between July 15, 2006, and June 2009; their ability to block an 80% super-majority vote that would be required to remove David Nicklas as manager of Vista A&S; and the shift to cash-paying investors of the risk of loss on the lease investments—all with no cash outlay on Defendants' part.  (Filing 54-1 ¶¶ 27-29.)

Accepting all factual allegations in Plaintiff's second amended complaint as true, and considering the complaint in its entirety, I find that Plaintiff has clearly specified the alleged misrepresentation made by Clark and David Nicklas and the reasons this misrepresentation was misleading, as well as particular facts that make it "'at least as likely as' not" that the Nicklases acted with knowledge or intent to deceive Plaintiff and other investors in order to obtain substantial financial benefits without any cash outlay and to shift the risk of loss to others.  *Merck & Co., Inc.*, 130 S. Ct. at 1796 (quoting *Tellabs, Inc.*, 551 U.S. at 328).  Accordingly, the defendants' motion to dismiss Plaintiff's federal fraud claims for failure to sufficiently allege scienter will be denied.

### 3.  *Loss Causation*

Correctly asserting that Plaintiff is required to plead "loss causation" in order to sustain his federal securities fraud claims, Defendants next move to dismiss those claims for Plaintiff's failure to do so.  (Filing 31, at 2.)

"Loss causation" in the securities context is simply "the common law's universal requirement that the tort plaintiff prove causation.  No hurt, no tort." *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683-84 (7th Cir. 1990) (Posner, J.). In order to sufficiently allege loss causation, a complaint must "state facts showing

a causal connection between the defendant's misstatements and the plaintiff's losses." *McAdams*, 584 F.3d at 1114.  Specifically, the plaintiff "must show that the loss was foreseeable *and* that the loss was caused by the materialization of the concealed risk." *Id*. (emphasis in original; internal quotation omitted).  "[T]hreadbare, conclusory" allegations will not suffice; rather, the plaintiff must specify *how* the alleged misrepresentation proximately caused the plaintiff's losses.  *Id.* at 1114-15.  This standard requires the plaintiff to show that the defendant's fraud—not other events—caused the loss.  *Bastian*, 892 F.2d at 682-86 (investors in unsuccessful oil and gas limited partnerships who claimed they would not have invested but for fraud by promoters of investment did not allege loss causation, as investors failed to allege "*why* the investment was wiped out"; "If the defendants' oil and gas ventures failed not because of the personal shortcomings that the defendants concealed but because of industry-wide phenomena that destroyed all or most such ventures, then the plaintiffs, given their demonstrated desire to invest in such ventures, lost nothing by reason of the defendants' fraud and have no claim to damages.")*; see, e.g., Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 550 (8th Cir. 2008) (in case alleging drop in security's price, plaintiff was required to show that the alleged fraud caused price decline, as opposed to "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price").

Defendants contend that Plaintiff has failed to show how the *form* of Vista Oil's investment (that is, the contribution of land and services as opposed to cash) caused any decline in the value of Plaintiff's interest in Vista A&S—in short, Plaintiff has failed to allege *how* the fraud caused Plaintiff's damage.  It is more plausible, maintains Defendants, that the disappointing distributions received by Vista A&S's members were based on a reduced demand for drilling sites in a depressed natural gas market because the timing of this venture coincided with a period in which oil and natural gas prices fell.  This decline in underlying commodity prices had a negative effect on the marketability of property, like that at issue here, whose primary value

13

was its oil and gas reserves.  (Filing 31, at 22-29.)  "[T]he apparent cause of the losses claim[ed] by Plaintiff was the market downturn, not any misconduct attributable to Defendants.  Plaintiff certainly does not make the required effort to distinguish his alleged losses from those caused by the general decline in oil and gas prices."  (Filing 31, at 29.)

Plaintiff counters that Defendants mischaracterize his allegations and theory of damages.  Plaintiff submits that the damage from Defendants' misrepresentation was immediate and calculable and has nothing to do with the "form" of investment made by Defendants.  Rather, Plaintiff alleges that despite their claim that they invested $1,000,000 cash in Vista A&S, Defendants actually made *neither* a cash nor in-kind investment in exchange for their 25% share in Vista A&S, which had the effect of instantaneously diluting Plaintiff's $300,000 interest in Vista A&S.  As described by Plaintiff, this misrepresentation "literally put $800,000 (25% of $3,200,000) worth of the cash investors' equity into Defendants' pockets at the moment the transaction occurred."  (Filing 73, at 9.)  Plaintiff asserts that this is not a "fraud-on-the-market" case where he was injured by the disclosure of previously concealed and damaging information that resulted in a decline in stock market prices, nor does his theory of damages have anything to do with an allegedly depressed oil and gas market.  (Filing 73, at 5-12.)

Plaintiff has explicitly alleged a causal connection between the alleged misrepresentation (Vista Oil invested $1,000,000 in Vista A&S); the subsequent substantial cash investments in Vista A&S by Plaintiff and others who were induced to invest because of the misrepresentation; and Plaintiff's loss (25% dilution of all investors' equity in Vista A&S in favor of the defendants).  Thus, Plaintiff's second amended complaint "provides the defendants with notice of what the relevant economic loss might be" and "what the causal connection might be between that loss and the misrepresentation," thereby sufficiently pleading loss causation.  *See Dura Pharm., Inc.*, 544 U.S. at 347-48.  Therefore, the defendants' motion to dismiss based

14

on failure to sufficiently allege loss causation will be denied.

### 4. Section 20(a) Claim

Defendants argue that if Count 6 (Section 10(b) and Rule 10b-5 securities fraud) is dismissed, then Count 7 (claim for controlling personal liability under § 20(a) of Securities Exchange Act of 1934) must also be dismissed because Count 7 is wholly derivative of Count 6. *See Deviries v. Prudential-Bache Securities, Inc.*, 805 F.2d 326, 329 (8th Cir. 1986) (without an underlying violation of the 1934 Act or any rule or regulation promulgated under its authority, a plaintiff cannot state a claim under § 20 of Securities Exchange Act).  However, because I have concluded that the plaintiff has sufficiently stated a claim under section 10(b) and Rule 10b-5, the plaintiff's section 20(a) claim shall not be dismissed on the grounds asserted by Defendants.

### 5. State-Law Fraud Claims

Defendants maintain that if Plaintiff's federal securities law claims are dismissed, this court should decline to exercise supplemental jurisdiction over Plaintiff's state-law fraud claims.[7]  Because Plaintiff's federal securities law claims shall proceed, I shall deny Defendants' motion to dismiss Plaintiff's state-law fraud claims.

## B.  CLAIM FOR DECLARATORY JUDGMENT

Plaintiff requests that the court (1) declare that 100% of the ownership of Vista A&S is vested in those who invested cash in the company; (2) remove David Nicklas

---

[7]Count (2)—violation of the Securities Act of Nebraska, Neb. Rev. Stat. §§ 8-1101 to 8-1123; Count (3)—common law fraud.

15

as manager of Vista A&S and enjoin Clark and David Nicklas from exercising any management functions of Vista A&S based "upon any in[-]kind contribution or improperly acquired ownership interest"; and (3) appoint a receiver for Vista A&S, to whom David and Clark Nicklas shall "turn over . . . all books and records of Vista A&S."  (Filing 54-1 ¶¶ 58-66.)

Defendants move to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that because this action involves a claim for money damages based on allegations of past conduct, a declaratory judgment under 28 U.S.C. § 2201 is unavailable as a remedy.  (Filing 31, at 31-32.)  Plaintiff maintains that this lawsuit "is not exclusively about past conduct, . . . but is instead intended to provide a remedy which would minimize the danger of avoidable loss in the future, an appropriate application of the Declaratory Judgment Act."  (Filing 43, at 46-47 (internal quotations & citation omitted).)  Specifically, Plaintiff contends that this court's declaration of the rights of ownership in Vista A&S "will resolve who runs the limited liability company in the future, and who will make decisions as to the firms' investments and expenditures."  (Filing 43, at 47.)

Federal law expressly gives United States courts the discretion to grant declaratory relief.  "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "The operation of the Declaratory Judgment Act is procedural only.  By passage of the Act, Congress enlarged the range of remedies available in the federal courts but it did not extend their subject-matter jurisdiction."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2766, at 641-42 (3rd ed. 1998 & Supp. 2010) (footnotes omitted).

"Relief under the Declaratory Judgment Act is available only when an 'actual

controversy' is presented.  This statutory limitation is equivalent to the constitutional limitation that federal courts may exercise jurisdiction only over actual 'cases or controversies.'" *United Food & Comm. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 426 (8th Cir. 1988) (quoting U.S. Const. art. III, § 2 cl. 1; *Steffel v. Thompson*, 415 U.S. 452, 458 (1974)) (footnote omitted).  "A 'case or controversy' is presented when the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.  The difference between an abstract question and a 'case or controversy' is necessarily one of degree and must be determined by a review of the facts presented in each case." *United Food*, 857 F.2d at 426 (quoting *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 297-98 (1979)).

The parties do not dispute that this case involves a definite, concrete, and substantial controversy between parties having adverse legal interests.  Rather, the defendants protest the availability of declaratory relief when part of Plaintiff's claim is a request for money damages based on allegations of past conduct.  However, "[a] plaintiff may ask for a declaration either as the sole relief or in addition or auxiliary to other relief, and a defendant may similarly counterclaim therefor. Thus the court is not . . . limited to only remedial relief for defaults already committed or losses already incurred; it may either substitute or add preventive and declaratory relief." 10B *Federal Practice & Procedure* § 2768, at 663 (footnotes omitted); *see also* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.");  *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 882 (D. Minn. 2009) (refusing to dismiss claim for declaratory relief in breach-of-contract action because while plaintiff's claim for declaratory judgment encompassed breach-of-contract claim, scope of declaratory relief was broader and went "well beyond any pure contract remedy," as declaratory relief would delineate all parties' rights and obligations).

Therefore, I shall deny the defendants' motion to dismiss Plaintiff's request for

17

declaratory relief.  *See* 10B *Federal Practice & Procedure* § 2768, at 668 ("The rules of good pleading are as important in a suit for a declaratory judgment as in any other civil action, but pleading is simple under the Civil Rules and technicalities are not allowed to prevail over substantial rights.  All that is required is a simple statement of a claim on which relief can be granted showing that the court has jurisdiction and that an actual justiciable controversy is involved.") (footnotes omitted).

## C.  CLAIM FOR BREACH OF FIDUCIARY DUTY

Plaintiff's second amended complaint alleges that Defendants breached their fiduciary duties by the "payment of overhead of Vista Resources, Inc. in violation of the Operating Agreement; payment of a salary to David Nicklas in violation of the Operating Agreement, transfers of mineral interests into Vista A&S 2006-1, LLC at a markup in violation of the Operating Agreement, and transfers of [overriding royalty interests] to land owners at unreasonably high levels." (Filing 54-1 ¶¶ 88, 52-54.)

Further, Plaintiff alleges that Vista Oil & Gas, Inc., was the "purported initial member" of Vista A&S 2006-1 LLC, and that David and Clark Nicklas were president and vice-president, respectively, of that entity.  (Filing 54-1 ¶¶ 5-7.) Plaintiff also claims that Clark Nicklas was "directly in control of all that happened in all Vista entities" and although David Nicklas was listed "on the paper" as president of Vista Oil and manager of Vista A&S, "in fact all decisions were made by Clark Nicklas, the father of David Nicklas."  (Filing 54-1 ¶ 115.)

Defendants assert that Plaintiff has failed to state a claim against Clark Nicklas and Vista Oil for breach of fiduciary duty because "[i]n a manager-managed LLC like Vista A&S, members do not owe fiduciary duties to one another.  Vista Oil is a mere member of the LLC, and Clark Nicklas is not a member at all.  Thus, they owe no fiduciary duty that might give rise to a claim by Plaintiff."  (Filing 31, at 3.)

18

Acknowledging that "Nebraska's courts have yet to address this issue" (and string-citing Am. Jur. and five cases from other states), the defendants claim that it is "universally established in other states" that "non-managing members in a manager-managed LLC[] like Vista A&S owe no duty to the LLC or to other members."[8] (Filing 31, at 34.)

Vista A&S's Operating Agreement provides that Vista A&S is a "manager-managed limited liability company" and appoints "David M. Nicklas, the President of Vista Oil & Gas, Inc., . . . the initial Manager." The Operating Agreement further states that Vista A&S was organized pursuant to the Nebraska Limited Liability Company Act, and "all rights, liabilities, and obligations of the Members, both as between themselves and with respect to Persons not parties to this Agreement, will be as provided in the Act and this Agreement will be construed in accordance with the provisions of the Act." (Filing 54-2 ¶¶ 1.1, 2.8, 6.1, 6.2(a).)

As far as liability of Vista A&S's members is concerned, the Operating Agreement provides:

> Neither the Manager nor any Member will be liable, responsible or accountable in damages or otherwise to the Company or the other Members for any action taken or failure to act by the Manager or such Member in its business judgment on behalf of the Company within the scope of the authority conferred to the Manager or such Member by this Agreement unless such action or omission constitutes a breach or default under this Agreement, or gross negligence or willful misconduct . . . . Except as expressly provided in the Act, nothing in this Agreement will

---

[8]The only Nebraska case this court was able to locate that had the potential to address the question of whether the Limited Liability Company Act, Neb. Rev. Stat. Ann. §§ 21-2601 to 21-2654 (Lexis Nexis 2008 & Cum. Supp. 2009), creates a fiduciary duty among LLC members and managers was disposed of on procedural grounds. *Poppert v. Dicke*, 747 N.W.2d 629 (Neb. 2008).

confer any rights or remedies under . . . this Agreement on any other Person other than the Manager and the Members and their respective successors and assigns, nor will anything in this Agreement relieve or discharge the obligation or liability of any third person to any party to this Agreement.

(Filing 54-2 ¶ 9.1.) The Nebraska Limited Liability Company Act, which defines the rights, liabilities, and obligations of the parties to Vista A&S's Operating Agreement, provides:

(1) A member shall be liable to the limited liability company:

(a) For the difference between such member's contributions to stated capital as actually made and as stated in the articles of organization as having been made; and

(b) For any unpaid contribution to stated capital which such member agreed in the articles of organization to make in the future at the time and on the conditions stated in the articles of organization.

(2) A member holds as trustee for the limited liability company:

(a) Specific property stated in the articles of organization as contributed by such member but which was not contributed or which has been wrongfully or erroneously returned; and

(b) Money or other property wrongfully paid or conveyed to such member on account of such member's contributions to capital.

Neb. Rev. Stat. Ann. § 21-2620 (LexisNexis 2008 & Cum. Supp. 2009).

One source describes the Nebraska Limited Liability Company Act as making "members . . . liable for their own tortious conduct, even when they act on the LLC's behalf," and liable to the LLC and to third parties for "any obligation they create, or

20

purport to create, on the LLC's behalf" when members "purport to bind the LLC without authority to do so."  Further, "to the extent that the corporate law concept of 'piercing the corporate veil' applies to Nebraska LLCs, members can be liable to creditors who are able to pierce the corporate-type protection afforded by the LLC. Courts might pierce the LLC form and hold members personally liable if respect for the LLC form would work injustice."  J. William Callison & Maureen A. Sullivan, *Limited Liability Companies: A State-by-State Guide to Law and Practice* § 14:37 (2009 ed.) (*available in* "LLC" database in Westlaw).

Despite the absence of Nebraska case law in this area, and despite the existence of the above-quoted provisions related to duties and liabilities of members and managers of Nebraska LLCs, Defendants insist that Plaintiff cannot state a breach-of-fiduciary-duty claim because Clark Nicklas and Vista Oil owe no duty to Vista A&S or its members.  When there is not a case directly on point from the state's highest court, or if state law is ambiguous, a federal court must predict how the highest court of the state would rule if faced with the same issue.  *Cotton v. Commodore Exp., Inc.*, 459 F.3d 862, 863 (8th Cir. 2006); *Lederman v. Cragun's Pine Beach Resort*, 247 F.3d 812, 814 (8th Cir. 2001); *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000).

Neither party has briefed the issues of (1) whether the Nebraska Supreme Court would hold that members of manager-managed LLCs created in Nebraska pursuant to the Nebraska Limited Liability Company Act owe fiduciary duties to one another or the LLC, and (2) whether the Nebraska Supreme Court would hold that a manager-in-fact of a Nebraska LLC may be liable for breach of any fiduciary duty, if one exists.  Therefore, I shall deny the defendants' motion to dismiss Plaintiff's breach-of-fiduciary-duty claim at this juncture, without prejudice to reconsideration of the issue at the summary judgment stage, providing it is properly briefed at that time. NECivR 7.0.1(a)(1)(A) ("A motion raising a substantial issue of law must be supported by a brief . . . [that] must concisely state the reasons for the motion and cite to supporting authority.  A party's failure to brief an issue raised in a motion may be

considered a waiver of that issue.").

## D.  MISCELLANEOUS MOTIONS

I shall refer the defendants' motion to strike Plaintiff's jury demand (filing 32) to Magistrate Judge Zwart for disposition.  Finally, I shall deny as moot the defendants' motion to strike (filing 46) two of Plaintiff's exhibits (filing 44-1, exs. E & F) submitted as part of Plaintiff's response to Defendants' motion to dismiss because the court did not consider either exhibit.

## IV.  CONCLUSION

Looking at the face of the second amended complaint (filing 54-1) and relevant documents referenced therein, and drawing all inferences in favor of the plaintiff, I conclude that the plaintiff has satisfied the heightened pleading standard for federal fraud claims set by the PSLRA; Plaintiff's state-law fraud claims should proceed pursuant to the court's supplemental jurisdiction; and Plaintiff's claims for declaratory relief and breach of fiduciary duty shall go forward.  Thus, the defendant's motion to dismiss and for a more definite statement (filing 30) shall be denied.

IT IS ORDERED:

1.     Defendants' motion to dismiss and for a more definite statement (filing 30) is denied;

2.     Defendants' motion to strike Plaintiff's jury demand (filing 32) is referred to Magistrate Judge Zwart for disposition; and

3.     Defendants' motion to strike exhibits (filing 46) is denied as moot.

DATED this 16th day of June, 2010.

BY THE COURT:
*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.